UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| JOHN DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | CIVIL ACTION No. |
| MITCHELL DUMORNAY, | ) | 21-12073-FDS |
| AMANDA MATTESON, | ) | |
| DOUGLAS DEMOURA, | ) | |
| JENNIFER L. LADD, | ) | |
| JENNIFER E. GILARDI, and | ) | |
| JOHN DOES 1-3, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

**SAYLOR, C.J.**

This is an action by an inmate alleging violations of his Eighth and Fourteenth Amendment rights. Plaintiff "John Doe" (a pseudonym) is serving a prison sentence in state custody. He has brought a *pro se* complaint against various prison officials under 42 U.S.C. § 1983. The complaint alleges that defendants failed to protect him from a gang assault and have continued to exhibit deliberate indifference to threats against his life.

Defendants have moved to dismiss the action under Fed. R. Civ. P. 12(b)(6), asserting as an affirmative defense that plaintiff failed to exhaust his administrative remedies as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e *et seq.*

For the reasons set forth below, the motion will be denied.

I.  **Background**

The following facts are set forth as alleged in the complaint and attached exhibits.

A.  **Factual Background**

1.  **The Parties**

"John Doe" was originally sentenced to a five-year prison term in Virginia, for an offense that is not disclosed in the record. (Compl. Attach. 2 ¶ 1). Due to poor mental-health adjustment at the Virginia facility, he was transferred to the Massachusetts Correctional Institution-Cedar Junction ("MCI-CJ") in Walpole, Massachusetts on June 8, 2021. (*Id.*). On October 1, 2021, he was again transferred to the Souza-Baranowski Correctional Center ("SBCC") in Shirley, Massachusetts, where he is currently incarcerated. (Compl. at 2; Ex. 1 at 2).

Plaintiff brings this suit against eight defendants: (1) Mitchell Dumornay, Inner-Perimeter Security Officer; (2) "John Doe Sergeant," Inner-Perimeter Security Commander; (3) "John Doe No. 1," Correctional Officer; (4) "John Doe No. 2," Correctional Officer; (5) Amanda Matteson, Secure Adjustment Unit Manager; (6) Douglas DeMoura, Superintendent of MCI-CJ; (7) Jennifer L. Ladd, Superintendent-designee of the MCI-CJ Classification Appeal Authority; and (8) Jennifer E. Gilardi, Commissioner-designee of the Central Classification Appeal Authority.[1]

2.  **The Alleged Assault**

According to the complaint, several weeks after arriving at MCI-CJ, Doe participated in an interview with the Inner-Perimeter Security ("IPS") unit. (Compl. Attach. 2 ¶ 2). During that interview, he informed IPS Security Officer Mitchell Dumornay and "an unknown IPS supervisor" that inmates affiliated with the Security-Threat Group ("STG") Latin Kings

---

[1] Plaintiff will be referred to as either "Doe" or "plaintiff" throughout, while defendants will be referred to as either "John Doe No. 1," "John Doe No. 2," or "John Doe Sergeant."

were in possession of drugs. (*Id.* ¶ 2). He allegedly informed Dumornay that he was a "local and federal confidential informant," and provided his handler's contact information. (*Id.* ¶ 3).

On August 25 or 26, 2021, Doe was again interviewed by Dumornay and his "superior-commander" (identified as "John Doe Sergeant" in the complaint). (*Id.* ¶ 4). He allegedly informed Dumornay and Sergeant that various STG inmates were conspiring to retaliate against him due to their suspicion that he had been providing intelligence to IPS. (*Id.* ¶ 5). Dumornay allegedly told Doe that "he would 'look into the matter' and in the 'mean time [he] should have no problems.'" (*Id.* ¶ 6). Prison officials then returned him to his general population unit, which also housed members of the gangs allegedly conspiring against him. (*Id.* ¶¶ 6-7).

The complaint alleges that on August 29, 2021, Doe was assaulted by two STG members and stabbed with a homemade weapon upon leaving the shower. (*Id.* ¶ 8). Three correctional officers (identified as "John Doe 1," "John Doe 2," and "John Doe 3") who were nearby when the attack began allegedly ran out of the unit and locked the exit, preventing Doe from escaping. (*Id.* ¶¶ 9-10). He was apparently stabbed in the head and lost consciousness. (*Id.* ¶ 9). He was then transported to a trauma unit, where he was treated for broken bones in the face, skull, jaw, and nose. (*Id.* ¶ 12).

### 3. The Grievances

After returning from the hospital, Doe was placed in the secure adjustment unit ("SAU") or limited privilege unit ("LPU") under the care of the SAU administrator and manager, Amanda Matteson. (*Id.* ¶ 13). On September 9, 2021, he allegedly advised Matteson in person and in writing that he "wanted to be officially reviewed for Protective Custody," and sent copies of his request to the Superintendent of MCI-CJ, Douglas DeMoura (*Id.* ¶¶ 14-16). According to the complaint, Matteson told Doe "numerous" times that she had "forwarded [his] letter and request to [the] IPS unit and to defendant Jennifer E. Gilardi's office."

(*Id.* ¶ 17).

After he had been in isolation for two to three weeks without being interviewed by IPS, Doe allegedly submitted "Informal Complaints and Grievances" reporting Dumornay and Sergeant for failing to protect him, and reporting Matteson for "failure to authorize [his] case worker to officially begin the paper-work for Protective Custody review." (*Id.* ¶ 18). He received no response. (*Id.* ¶ 19). The complaint alleges that Dumornay, who is the Internal Grievance Coordinator ("IGC") at MCI-CJ, "deliberately intercepted the Informal Complaints and Grievances from being filed against him and his co-workers." (Compl. at 7). In response, Doe "logged the dates Grievances were put in the mail" and "informed Mental Health staff and prison administrators." (*Id.*).

In about the third week of September 2021, Doe notified DeMoura in person that Matteson was preventing him from being reviewed for protective custody, that Dumornay was blocking his grievances from being filed, and that he wanted protection "from future abuse or death." (Compl. Attach. 2 ¶ 20). DeMoura allegedly promised to meet with him "as soon as possible." (*Id.* ¶ 21). According to the complaint, no prison officials took measures to investigate the risk of future harm, or to review his request for protective measures. (*Id.* ¶ 22).

On October 1, 2022, Doe was transferred to SBCC, a maximum-security prison that houses STG members, including the inmates who attacked him. (*Id.* ¶¶ 23-24).[2] After being transferred, he allegedly learned that superintendent-designee Jennifer L. Ladd and commissioner-designee Jennifer E. Gilardi of MCI-CJ had notice of the assault and of his September 9 written request for protective measures. (*Id.* ¶¶ 25-26; Compl. Ex. 3 at 4).

---

[2] According to an exhibit attached to the complaint, the Classification Board had recommended that he be transferred to SBCC on August 24, 2021 (prior to the attack). (Compl. Ex. 3).

As of the filing of the complaint, neither Gilardi, Ladd, nor any other prison official had taken steps to remove him from general population housing, offer him protective custody, or allow him to officially file his grievances. (*Id.* ¶ 27).

The complaint states: "I am in continuous fear for my life and fear I will be murdered if I do not seek successful relief from this Court[] or if my Grievances are not filed." (*Id.* ¶ 28).

### B.     Procedural Background

On December 15, 2021, Doe filed a suit asserting a claim under 42 U.S.C. § 1983 for violations of his Eighth Amendment and Fourteenth Amendment rights, based on defendants' failure to prevent a violent gang attack against him and to take measures to prevent future attacks.[3] The complaint seeks monetary and punitive damages along with declaratory and injunctive relief.

Defendants have moved to dismiss the complaint for failure to state a claim upon which relief can be granted.

## II.     Fed. R. Civ. P. 12(b)(6) Standard

On a motion to dismiss, the court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the plaintiff must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).

---

[3] The complaint form can plausibly be read to indicate that plaintiff intended to check both the "individual capacity" and "official capacity" boxes for each defendant, or that he attempted to black-out the "official capacity" box to indicate that defendants are only being sued in their individual capacity. Gilardi is apparently only sued in her official capacity. (Compl. Attach. 1 at 2). The Court need not resolve this question at this point.

"The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if plaintiff's well-pleaded facts do not "possess enough heft to show that plaintiff is entitled to relief." *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008) (quotations and original alterations omitted).

Because plaintiff is proceeding *pro se*, the complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted); Fed. R. Civ. P. 8(e) ("[p]leadings must be construed so as to do justice."); *see also Instituto De Educacion Universal Corp. v. United States Dep't of Educ.*, 209 F.3d 18, 23 (1st Cir. 2000). Where the court cannot ascertain the nature and basis of any legitimate claims, however, it is under no obligation to rewrite the pleadings on his behalf. *See Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 Fed. Appx. 274, 276-277 (11th Cir. 2008) ("While a trial judge is to employ less stringent standards in assessing *pro se* pleadings than would be used to judge the final product of lawyers, this leniency does not permit the district court to act as counsel for a party or to rewrite deficient pleadings.").

**III.     Analysis**

Defendants have moved to dismiss on the ground that plaintiff failed to exhaust his administrative remedies as required under the PLRA.

    **A.     The PLRA Exhaustion Requirement**

The PLRA requires prisoners to exhaust "such administrative remedies as are available" before suing under any federal law. 42 U.S.C. § 1997e(a). That limitation "applies to all inmate suits about prison life, whether they involve general circumstances or particular

6

episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). To satisfy the exhaustion requirement, "prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'" defined by the prison grievance process. *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Thus, to meet the requirement of proper exhaustion, "a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Acosta v. U.S. Marshals Serv.*, 445 F.3d 509, 512 (1st Cir. 2006) (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)). A plaintiff's failure to exhaust administrative remedies is an affirmative defense that the defendant bears the burden to raise and prove. *Jones*, 549 U.S. at 216; *see also Cruz Berrios v. Gonzalez-Rosario*, 630 F.3d 7, 11 (1st Cir. 2010).

In *Ross v. Blake*, 578 U.S. 632 (2016), the Supreme Court identified three conditions "in which an administrative remedy, although officially on the books, is not capable of use to obtain relief," and is therefore "unavailable." *Id.* at 643. Those conditions include (1) when an administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) when an administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 643-44. In such cases, the failure to exhaust an administrative remedy will not bar the plaintiff from filing suit.

B.   **The Inmate Grievance Process**

The Commissioner of the Massachusetts Department of Correction issues regulations for the processing of inmate grievances, which are codified at 103 C.M.R. § 491.00 *et seq.*

Under those regulations, inmates are required to submit a Step 1 informal complaint

7

resolution form to the Informal Complaint Coordinator before filing a grievance. 103 C.M.R. § 491.09(4). Informal complaints must be submitted within 5 working days of the actual incident or of the inmate's becoming aware of the incident or situation. Mass. Dep't Corr. Informal Compl. Resolution Standard Operating Procs. 7(c).

Upon receipt of an informal complaint decision, an inmate may file a grievance within ten business days. *Id.* § 491.14(1). The grievance is initially reviewed by the IGC, who must acknowledge receipt of the grievance within one business day and respond within ten business days. *Id.* § 491.15(g). "The absence of a grievance response after six months shall be deemed a denial of the grievance." *Id.* § 491.14(9). An inmate may then appeal the decision to the Superintendent within ten business days. *Id.* § 491.16(1). The appellate authority shall respond within 30 business days from receipt of the appeal. *Id.* § 491.16(13).

Finally, a separate process exists for appealing a security classification—an inmate's designated facility security level. After receiving a written recommendation from the classification board, an inmate must file an appeal within five business days. 103 C.M.R. § 420.07(h). Appeals are reviewed by the Commissioner's designee, whose decisions are final. *Id.* § 420.07(i).

    **C.**    **Plaintiff's Grievance Filings**

Defendants contend that plaintiff failed to file any grievances concerning the August 2021 assault, and therefore has not exhausted his administrative remedies. (Defs.' Mem. at 7). Plaintiff responds that he attempted to file grievances related to the assault and his subsequent efforts to receive protective custody, but that prison officials (in particular, Dumornay) prevented the grievances from being filed. He also contends that he appealed an inmate-classification decision recommending placement in a maximum-security prison, and that the appeal was denied. Because the administrative procedure for filing informal complaints and grievances

8

differs from that for classification appeals, the Court will analyze them separately.

### 1. Failure to Prevent Assault and Place in Protective Custody

The complaint alleges that two or three weeks after being placed in isolation, following the assault, plaintiff began to submit "informal complaints and grievances" to report (1) Dumornay and Sergeant's failure to protect him from attack and (2) Matteson's failure to authorize his case worker to begin paperwork for protective custody. He allegedly received no response to those grievances. It further alleges that Dumornay—who, as IGC, was responsible for reviewing prisoner grievances—"deliberately intercepted the Informal Complaints and Grievances from being filed against him and his co-workers." (Compl. at 7). Plaintiff apparently notified DeMoura that Dumornay was blocking the grievances from being filed, but no action was taken.

Plaintiff has attached various documents to his memorandum in opposition purporting to provide evidence of his numerous attempts at filing informal complaints and grievances, and his efforts to notify prison officials of Dumornay's interference. (*See* Pl.'s Certificate of Record). Defendants, on their part, submit five of plaintiff's grievance filings addressing unrelated issues as evidence of his "familiarity with and frequent use of the inmate Grievance process." (Defs.' Mem. at 6; Exs. 1-2). They do not, however, counter plaintiff's assertion that Dumornay prevented the grievances from being filed, beyond stating that the Inmate Grievance regulations require the IGC to be impartial and that Dumornay was appointed by Superintendent DeMoura. (Defs.' Reply at 5).

At the motion to dismiss stage, the court may not consider documents other than the complaint and its attachments without converting the motion into one for summary judgment. *Freeman v. Town of Hudson*, 714 F.3d 29, 35-36 (1st Cir. 2013). Rather than do so here, it is sufficient to say that, taking the facts alleged in the complaint as true, it states a plausible claim

9

that plaintiff was prevented from filing his grievances and completing the appeal process. The fact that Dumornay had an apparent "conflict of interest" because some of the grievances were directed at his behavior makes it at least plausible that, as IGC, he failed to file the grievances. And the grievance procedures do not set out a clear mechanism for how an inmate should proceed if it appears that his grievances were not filed. The complaint therefore appears to plausibly allege either that the administrative scheme was so "opaque" as to be "incapable of use," or that prison administrators "thwart[ed him] from taking advantage of [the] grievance process through machination, misrepresentation, or intimidation." *Ross*, 578 U.S. at 643-44. *See Williams v. Correction Officer Priatno*, 829 F.3d 118, 124 (2d Cir. 2016) (concluding that a grievance process was "opaque" where it gave no guidance to an inmate whose grievance was allegedly not filed, even though the grievance process technically allowed him to appeal in the absence of a response); *Carter v. Newland*, 441 F. Supp. 2d 208, 211 (D. Mass. 2006) (denying motion to dismiss for failure to exhaust administrative remedies where there was "a genuine fact question as to whether [plaintiff's] attempt to [file grievance forms] was thwarted by either government incompetence or misconduct").

Accordingly, the motion to dismiss for failure to exhaust administrative remedies for plaintiff's grievances related to the assault and denial of protective custody will be denied. The Court will reserve further judgment on whether plaintiff actually exhausted his administrative remedies until after the factual record is further developed.

### 2.   **Appeal of Security Classification**

In addition to the grievances related to the assault, the complaint also alleges that plaintiff appealed his security classification.

On August 24, 2021, the classification board apparently recommended that plaintiff be transferred to SBCC, a maximum-security facility. (Compl. Ex. 3). Plaintiff filed an appeal of

that decision on the basis that placement in a maximum-security facility "is extremely detrimental to both [his] mental and physical health," and because the classification board apparently did not correctly assess his education and escape history. (*Id.* at 2-3). On September 15, 2021, the Superintendent-designee of MCI-CJ's Classification Appeal Authority, Jennifer Ladd, recommended that the appeal be denied, concluding that plaintiff's mental health needs could "be addressed at any DOC facility." (*Id.* at 4). On September 29, 2021, the Commissioner-designee of the Central Classification Appeal Authority, Jennifer Gilardi, approved Ladd's recommendation (and denied plaintiff's appeal), concluding that he had been scored correctly, and that his mental health needs could be met at SBCC. (*Id.* at 5). Plaintiff therefore appears to have received a final decision on his classification appeal.

Defendants do not specifically address plaintiff's assertions related to the security classification. In any case, it is at least plausible that plaintiff has complied with the classification-appeal procedure set out in 103 C.M.R. § 420.07.

Accordingly, to the extent plaintiff's Eighth Amendment claim depends upon the denial of the classification appeal, the motion to dismiss for failure to exhaust administrative remedies will be denied.

**IV.   Conclusion**

For the foregoing reasons, defendants' motion to dismiss is DENIED.

**So Ordered.**

                                                /s/ F. Dennis Saylor IV
                                                F. Dennis Saylor IV

Dated: April 27, 2023                           Chief Judge, United States District Court